The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. You may be seated. Mr. Flint? Yes. Good morning, Your Honors. May it please the Court, Daniel Flint on behalf of the Appellant, Aaron Keena. The Federal Arbitration Act was enacted in 1925. It is not applicable to the times of today. This is especially true when the arbitration agreement includes a class action ban, as is the case here. In fact, the United States Supreme Court in AT&T v. Concepcion specifically stated that class arbitration was not even envisioned by Congress in 1925 when the Federal Arbitration Act was passed. Despite these truths, a five-year study by the Consumer Financial Protection Bureau establishes that the larger corporations of this great country have hijacked the Federal Arbitration Act in a successful attempt at avoiding class-wide liability for violations of state and federal regulations. And it is that reason that the issues raised by Ms. Keena's appeal are so important. The first issue raised is whether or not Ms. Keena has jurisdiction in front of this Court to bring this appeal. And we have jurisdiction for two distinct and separate reasons. The first is found under the Federal Arbitration Act itself, specifically 9 U.S.C. 16A3, which allows appeal of any decision that is, quote, a final decision with respect to an arbitration. Now, the United States Supreme Court in Greentree v. Randolph has already held that a final decision with regard to the Federal Arbitration Act is satisfied by district court order that compels arbitration and dismisses the claims with prejudice, which is exactly what we have in this case. The district court order that's being appealed compelled arbitration and dismissed the claims with prejudice. The only difference being that, in this case, Ms. Keena had to file a Rule 59E motion to amend the original order to dismiss the claims. The original order from the district court compelled arbitration and stayed the action. We filed a motion under 59E alleging that it is impossible for Ms. Keena to continue under those circumstances. Therefore, we requested the district court amend its order to dismiss the claims with prejudice. You say that's the only difference, but for Article III purposes, it's a really big difference, right? Because we've held that normally a party doesn't have standing to appeal an action that the party asks the court to take. Correct, Judge. There is a difference in that case. But in those cases, Federal Rule 23F allows the individuals to appeal a certification or a decision that is adverse to class certification. In this case, we never had that ability. We could never appeal under 23F. That's the whole point, right? That's their argument. Congress, like, this is not a symmetrical thing because the statute is pro-arbitration and it has a generally pro-arbitration intent. And so, therefore, you can appeal immediately the denial of a motion to compel arbitration, but you may not appeal immediately the granting of such a motion. Yes, Your Honor. It's not a bug. It's a feature. So there are two things that I'd like to point out. First is the United States Supreme Court in Greentree v. Randolph did not look into the propriety of whether or not the district court in that case should have stayed or dismissed the case. They specifically refused to do that. The Supreme Court simply said that the fact that there was an order dismissing the case with prejudice was enough to satisfy the Federal Arbitrations Act final decision rule with respect to arbitration. The second issue goes into jurisdiction under FRCP 23F. And in that, under that statute or under that court rule, the Court of Appeals may permit an appeal from an order granting or denying class certification. The Microsoft v. Baker, which I'll get to in a moment, in footnote 7, it specifically said that orders striking class claims are the functional equivalent to an order denying class certification and, therefore, appealable under 23F. In this case, the Court's order compelling arbitration also enforced the ban on class allegations, meaning there is under no circumstance that Ms. Kena could ever bring a class action against Groupon. That is the functional equivalent of striking the allegations from the complaint, the class allegations. Just the same as an order denying class certification or just, I'm sorry, just the same as an order striking class claims is the functional equivalent of an order denying class certification. Both an order striking the claims and an order compelling arbitration and enforcing a ban on class actions makes it impossible for the plaintiff to bring a class action in any forum. They are both doing the same things. Therefore, our case is the functional equivalent of an order denying class certification and should be appealable under 23F. There is no precedent that I'm aware of that from any district that says an order compelling arbitration and enforcing a ban on class actions is the functional equivalent under Rule 23F as an order denying class certification. However, it is our argument that it should be, and we believe that the Supreme Court, in fact, would find it the functional equivalent as an order denying class certification. Now, Microsoft v. Baker actually discussed this point, and they reasoned that by removing the power of the district court to defeat any opportunity to appeal, the drafters of Rule 23F sought to provide significantly greater protection against improvident certification decisions than 1292B alone offered. In this case, Groupon's tactic of inserting the class action ban into the arbitration clause makes it impossible for the district court or for the plaintiff to appeal a decision that is adverse to class certification because it makes it impossible for her to, one, even certify the class because there is a complete ban on class certification, and two, there is no precedent to date that says we should be allowed to go to the Court of Appeals under Rule 23F. This tactic, in turn, does the exact same thing that Rule 23F was designed to prevent, which is give the district court the last say on a decision that is adverse to class certification. There can be no doubt that enforcing a complete ban on class certification is adverse to somebody's ability to certify the class. It literally prevents them from doing so. Rule 23F is supposed to take the power of the district court to have the last say on orders such as that out of their hands and put it in the Court of Appeals' hands. That is why Groupon's tactic subverts Rule 23F because it prevents us from coming to the court and actually appealing that decision. So, again, we have jurisdiction under the Federal Arbitration Act and under Federal Rules of Civil Procedure 23F. In addition, our reasoning, or the facts in this case, do not offend the reasoning in Microsoft v. Baker. Specifically, Microsoft v. Baker was worried, one, about piecemeal appeals. The major difference between our case and that case is the fact that the plaintiff in Baker had the ability to first file a petition under 23F to appeal the denial of the class certification. We never had an opportunity whatsoever to bring a certification motion, so we never had the ability to petition the court for an appeal under 23F. So, there is no more piecemeal, or the facts of our case invite no more piecemeal appeal than an appeal under 23F. Because just like the appeal under 23F, if this court denies Ms. Pina's appeal, she just goes back and she cannot continue as if it's an interlocutory appeal. The case is over. And that goes to the second concern in Baker, which was that the ruling or the tactic used in Baker, which was a voluntary stipulation to dismiss the case after they already attempted a 23 petition. In that case, the court was worried that it could allow multiple interlocutory appeals of the same issue. That's a non-issue in our case. If we lose that appeal, we cannot go back and simply continue on the case as if it was an interlocutory appeal. If we lose, it's over. In addition, the Supreme Court in Baker was concerned that the voluntary dismissal tactic used in Baker gave plaintiff exclusive control over the appeal. We don't have that in this case either. The district court could have denied Ms. Pina's 59E motion just the same as it could have denied a petition under 1292B. Ms. Pina does not have the final say in this case, and the district court, in fact, could have denied that. So there is no exclusive control. In addition, the court in Microsoft was worried that it only allows plaintiffs to appeal an adverse certification decision. In our case, we're not dealing with, technically not dealing with an adverse certification decision. We're dealing with a decision to compel arbitration. So in this case, the defendant has an absolute right already to appeal under the Federal Arbitration Act. So that concern as well is a non-issue in our case. The Supreme Court was also worried that the tactic used in that case would circumvent 1292B's two-tier screening process. We don't have that issue in this case either. As I just previously said, the district court could have denied the 59E motion just as it can deny a petition to appeal under 1292B. In addition, the Court of Appeals has the duty to look into subject matter jurisdiction in every case. So this court, too, has the ability to deny Ms. Pina's appeal. So Ms. Pina's 59E motion does not circumvent the two-tier screening procedure. Sorry, how could we deny? Are you saying we could dismiss the appeal for lack of jurisdiction? Well, I'm saying that the Court of Appeals has the ability to raise the issue on their own. They don't need it. So even if the parties don't bring it. Which issue? The issue of jurisdiction, whether or not this court has jurisdiction. I'm only just— Only if it's raised on our own. Do we have to? You moved to dismiss the King down at the district court level. Yes, we did. And the main difference— That was granted. Your motion to dismiss was granted. Yes. And you're trying to appeal from your own dismissal. That is correct. But the difference in our case compared to all the others and the death kneel theory that was discussed in Microsoft v. Baker, both the plaintiff in Baker and the death kneel theory in general, they involve situations where it's either imprudent or it's not impossible for them to go to arbitration. Our case, we are arguing that it is impossible for us to go to arbitration. It's only impossible in those cases. I mean, that's the whole point. It's economically impractical slash impossible in exactly the same way. Correct. But we do not—we are not arguing that it's impractical. We're arguing that it's literally impossible. How is it literally impossible? Because the cost of going to arbitration— No, no, that just makes it economically impractical, which is exactly—I mean, I don't— That's exactly what the plaintiffs are saying in the death knell set of cases that the Supreme Court rejected. And the biggest issue between those cases, such as Baker, and our cases, is they have the ability to file a petition under 23F because there was a certification decision already made in that case. In our case, we don't have that ability because under 23F, we should have the ability, but—and that's what we're arguing. You have to file for certification of an interlocutory appeal, right? So it's the same idea. If anyone thinks this thing needs to get heard right away, it'll get heard right away. But it won't under the current precedent. At least 23F only says order that grants or denies certification, which we have not done. Certification has never been an issue raised yet. The only other issue—the only other way under 23F to get a case into the Court of Appeals is, as noted in footnote 7 of Microsoft v. Baker, if the order that you're appealing strikes class claims, then it's considered the functional equivalent of an order denying class certification. And therefore, it's appealable under 23F. But the district court could have—the district court had discretion, right, you think, and the district court thought, under 1292B to certify this case for immediate appeal if the district court thought that there was some important controlling question of law that needed to be addressed. And then we could have taken it. So nobody's hands were tied here. Well, that's a good point, Judge. But the fact is, is that we couldn't appeal under 29—or 1292. And if you give me one second. Because I believe Groupon argued that exact point. But the reason we couldn't appeal under 29 to is because—oh, is because of the Federal Arbitration Act. The Federal Arbitration Act says that we can't appeal anything. If you lose a motion to compel arbitration, you can't appeal it. You filed—am I wrong about this, that you filed in front of the district court for certification of an interlocutory appeal? No, we did not. You did not ask for that? No, you're not. Why did the district court deny it? I'm sorry? But the district court denied what it thought was a request that it certify for interlocutory appeal the case. I don't believe that that occurred. Okay. No. And that's a main issue. And, in fact, I've had this issue come up before where I have filed a 1292B, and it was denied because of the Federal Arbitration Act. Because this is what the main issue is. The Federal Arbitration Act— I'm looking at the district court order. I'm sorry? I'm looking at the district court order, which says—is this the wrong case, you guys, or Kena versus Groupon, right? Yes. Okay. In the alternative, plaintiff requests that this court certify an interlocutory appeal. Oh, we did, Your Honor, but they didn't come to that conclusion because they granted our—they didn't even—if I'm remembering this correctly, the district court didn't address that issue because they found that they would just dismiss it based upon our rule. No, the district court— It's addressed in the footnote in the order, isn't it? The district court addressed it. It said there's no— It is addressed. Yes. I was under the assumption, and I apologize. It says it's denied. But does it say the reason was because it was granting the 59E motion to dismiss the case? No, it does not say that. And anyway, that wouldn't make any sense because the whole point is your—that wouldn't make any sense because here you're asking for immediate appeal of an order that is not final. The reason the order became not final was because they granted your 59E motion. Now there's a non-final collateral order, and the question is whether the district court will nevertheless certify it for immediate appeal. And the district court says, no, I won't because it's not that important. I noticed my time's up. It just came to me what our response was. If you wouldn't mind, I can let you know. The issue with that is that that gives the district court final say over an order that adversely affects certification of a class. That puts the keys in the district court's hands. Because this order does adversely affect a decision on class certification, it makes it impossible for us to bring class certification. That is in direct conflict with Rule 23F, which, as Baker specifically points out, was designed to take that power away from the district court. That was—that is the big issue. So, thank you. Thank you, counsel. Mr. Shetty. Good morning, Your Honor. My name is Scott Shetty. I represent the appellee, Groupon, Inc. May it please the Court. The substantive issue on this appeal was whether the district court's decision that—ruling that there was an enforceable agreement between Groupon and the plaintiff that included an arbitration clause was enforceable and the case should proceed in arbitration is supported by the record. And this Court could and would affirm if it reaches that issue. But it need not reach that issue, indeed may not reach this issue, because there is no appellate jurisdiction over this case. What we have, Your Honor, is a situation here where a plaintiff sidestepped clear jurisdictional rules to try to engineer or manufacture or appeal appellate jurisdiction where there was no appellate jurisdiction. Plaintiff's actions are improper. They're inconsistent with Microsoft v. Baker, the principles set forth in that case. They're inconsistent with Article III case and controversy requirements. And, therefore, we ask that you dismiss this appeal for want of jurisdiction for two reasons. First of all, there is no final order under Section 1291, as that term is defined, that would allow the Court to hear this appeal. When the district court granted Groupon's motion to compel arbitration back on June 21st of 2016, it granted the motion to compel arbitration and stayed the case. It is undisputed express language of the FAA that that is not an appealable order. Four months went by, and plaintiffs filed this motion under Rule 59E as a set-aside query whether that was even a proper mechanism, given that there was no final judgment to be amended. But, at any rate, they filed a motion to Rule 59E to modify the judgment to either certify interlocutory appeal or to dismiss the case because of what they say is an impossibility so that it would set up an appeal. And you are correct that the footnote in the judge's order made clear that whether you looked at it through the lens of the FAA or 1292, because neither were specified in plaintiff's motion to amend, there was no reason. Under the FAA, it couldn't be appealed. And under 1292, none of the requirements were not triggered. So, in reliance on the statement that the plaintiff would not prosecute her individual arbitration, the court granted the motion and dismissed the case with prejudice. Now, at the point that the court did this, or excuse me, at the point the plaintiff asked for the case to be dismissed, Judge King, as you pointed out, the case, we're here on the odd situation that there's an appeal of a dismissal that the plaintiff asked for. The Microsoft v. Baker gives a statutory reason why there is no appellate jurisdiction. Microsoft v. Baker was a Rule 23-F case, and maybe I'll take a bit of a side note here. This is not a Rule 23-F case. I checked the jurisdictional statement in the appeal. The jurisdiction of this appeal, according to the plaintiff, is under 28 U.S.C. 1291. But what's more important is, as the panel knows, the Rule 23-F is implicated in the trial court with a request while the case is in the trial court with a permission, filing in the appellate court asking for permission to raise the appeal. That was not done here. So, Rule 23-F, that discussion, is really not relevant to any of the issues before the court. But at any rate, the Baker case is. And in the Baker case, we had, there's a long and tortured history, but to cut to the chase, we had class plaintiffs whose motion for, whose class allegations were stricken. And therefore, in order to take an appeal, they dismissed their claims and took it up. And the Supreme Court held that that was improper. And there are three parallels between Baker and this case that justify or actually mandate that this court should deny jurisdiction. The first is, the primary problem with the Supreme Court had with what happened in Baker, it was a unanimous decision, was that what the plaintiffs were doing in Baker was circumventing, to use their term, the careful calibration of Rule 23-F in that appellate scheme. Now, of course, as I said, this is not a Rule 23-F appeal. But the same rationale applies here, where you have the FAA, which clearly states that a motion to compel arbitration that is granted cannot be appealed immediately, but a motion that compels arbitration denied can. And so what plaintiffs are trying to do here, just as the plaintiffs tried to do in Baker, is to sidestep the careful calibration, in this case of Congress with the FAA, and in the case of Baker with the Supreme Court with Rule 23-F. So that's one reason there's a parallel that mandates dismissal. The second is that this approach also causes the same problem in Baker, which is the potential for multiple appeals. If this tactic were allowed, and the court were to allow an appeal and potentially revisit and remand on the arbitration issue, we'd be up on appeal here, potentially up on appeal on 23-F, and that's the end of the case. And as was the case in Baker, there's no reason why there should be the possibility in the judicial inefficiencies of multiple appeals. And the third point, and I think, Judge Harris, you raised this, is that there are options available to them that did not require this sort of procedural sidestepping. The motion that they filed was for interlocutory appeal or to amend the judgment. If they really had what they thought was a death-knell argument of some kind, recognizing that the Supreme Court had unanimously rejected that in the Coopers v. Libran case, they could have made that argument in a 1292 context, saying there's a good reason why this case needs to go up on appeal, and they didn't do that. The easier approach would have been that they could have tried this, arbitrated this case on an individual basis. And we have this affidavit or declaration from Ms. Kena saying that's an impossibility. And, Judge Harris, I think you were right on with your observation that it's not an impossibility. It may be economically inefficient. But I would even quibble with that, and this is in the record. The arbitration agreement between Groupon and Ms. Kena says that Groupon will pay all the costs of the arbitration, the filing fees, the arbitrary costs, et cetera. The only cost that would be incurred by the plaintiff would be their own attorney's fees. Moreover, the default arbitration under this arbitration agreement is an arbitration on the papers. They could choose to have an in-person hearing. So what would be involved in actually taking an arbitration on an individual case and getting it to a final judgment, win or lose? They got them legitimately in front of this court on an appeal. It would have been a minimal lift. You're saying the arbitration wouldn't have amounted to much. In terms of the cost, it could have been. The cost Groupon was going to pay, and the attorney's fees, like any contingent fee case for a plaintiff's lawyer. That's right. And the arbitration agreement, which is in the appellate record, mandates that as long as the arbitration fees would not exceed $10,000, Groupon would pay all of the fees involved in the arbitration. And again, I'll reiterate that default arbitration here is on the papers. And so the easiest path, in fact, in the four-month period between the time that the district court entered his order on June 21st of 2016 and when they came up and asked for the modification, conceivably they could have been through an arbitration on an individual basis. Win or lose, we would not be standing here arguing about appellate jurisdiction. We would be arguing about whether the decision to enforce the arbitration clause was right or wrong. So the fact of the matter is, like Baker, there were opportunities available to do something other than this extreme procedural sidestep to manufacture appellate jurisdiction. I want to address one other point on this before moving forward, is that in Baker, I made the point that this is not a Rule 23-F appeal, but there's this notion about the statement in Baker that a motion to strike class allegations is equivalent to a motion denying class certification. That's not implicated here either. What we have here has nothing to do other than whether there's an enforceable arbitration agreement that has a class action waiver. Concepcion, Italian colors, there's a lot of precedent that gives guidance and we think dictates the result that the district court has reached. But 23-F and this motion to strike, none of that has any relevance. What has relevance is the fact that the Supreme Court has said a plaintiff cannot engineer their own appeal, or to put it the way you did, Judge King, a plaintiff cannot ask for their case to be dismissed and then appeal that dismissal. So for a statutory reason the ---- But Baker doesn't really stand for that proposition. Well, Baker does stand for the proposition that if a plaintiff ---- But to do that, you have to cite Judge Thomas' concurrence. Well, Judge Thomas' concurrence was an Article III issue, which I will get to in just a moment. Okay. The majority in Baker, I do think, respectfully, Judge King, it does mandate the finding that there's no appellate jurisdiction, because just as the plaintiffs there tried to sidestep Rule 23-F and the careful calibration, to use their words that were set up, so too does the plaintiff's action here try to sidestep the careful calibration of Congress in the FAA, where it says if you lose a motion to compel arbitration as a defendant, you can appeal it, and if you win, that cannot be appealed by the plaintiff. Just before you leave the statutory argument, can I ask you one question? At least as I understand it, there's a split in the circuits, and our own circuit has cases going both ways on whether, if it is not voluntary, there's been no motion to this effect, whether a district court otherwise has the authority to dismiss a case rather than staying it when it grants a motion to compel arbitration. Do you know? I'm familiar with that issue, and I believe under the ---- Do we have to reach that in this case? I don't think you have to reach that, because in this case, the district court ---- well, let me step back. Under the FAA, the district court has the option, I believe in the clear language, to either stay and proceed and ---- excuse me, have the parties proceed in their arbitration and stay the case, retain jurisdiction so that if and when there's any kind of issue or an enforcement of a judgment, it comes back to this court. But I believe that the ---- and I don't think we're taking the position, nor do I have, had he chosen to compel the arbitration and dismiss the case. And under Greentree v. Randolph, had they done that, we wouldn't be having this discussion. We would be talking about the substance of the appeal. But that's not what the district court did. And when ---- that issue, the plaintiff, rather than either seeking a very formal 1292, or if they really believe this 23F theory, seeking a 23F appeal, or simply going forward with an arbitration on an individual basis on the papers and then taking it up once that was done. See, this is ---- I feel like I didn't express my question right. A big part of your argument, right, is that it would undermine the FAA to allow an immediate appeal in circumstances like this because the whole point of the FAA is that you can immediately appeal the denial of a motion to compel but not to grant. We have cases going both ways on whether a district court can effectively do exactly that by dismissing the case instead of staying it. Forget whether or not a party asks for that. But if a district court can, in fact, dismiss the case rather than staying it, then the district court can engineer an immediate appeal contrary to the policy of the FAA. So I'm wondering whether our decision in this case is necessarily going to bear on this other question about whether a district court is generally authorized to dismiss under these circumstances. Right. Your Honor, I don't ---- I actually don't believe the court needs to decide that. And I don't know that I have the text of FAA Section 16 in front of me, but I believe in ---- I believe my colleague cited it. 16b3 expressly allows for the district court to dismiss the case. And so if I'm misunderstanding your question or confused with what the issue is ---- Section 3, which is the section that refers to staying the case when you grant a motion to compel. I believe b1 is the section that refers to staying the case, and b3 is the option that it can be dismissed. And in that Greentree v. Randolph case, the Supreme ---- They leave this question open. Right. The Supreme Court said, look, if the district court grants the motion to compel arbitration and dismisses, that is a ---- there is appellate jurisdiction that can come right up. So the district court could have done that here, that he chose not to. So, as I said, the court could dismiss this appeal for finding no appellate jurisdiction because there is no final order that you could reach a statutory conclusion. Alternatively, you could have ---- there is a constitutional reason why the case has no appellate jurisdiction, and that's because there no longer is a case for controversy. The plaintiff has walked away from her claim. What about the constitutional avoidance doctrine? You should avoid the constitutional issue if there is a statutory issue. Right. That's why I argued the statutory issue first, Your Honor. You think the statutory issue would ---- We think the statutory issue is ---- Is preferable. I think it's preferable. And having dealt with that issue in the Fourth Circuit, I know there is a strong preference for dealing with the statutory before the constitutional. But if we have to get to the constitutional, this Rhodes v. DuPont case, which is on all fours. In that case, there was a class plaintiff who had claims that many of which were dismissed on summary judgment. The only claim that was left was medical monitoring. The class certification motion on medical monitoring had been denied. They dismissed the medical monitoring claim to take an appeal, and this Court found that under those circumstances, you can't engineer a ---- when you give up your claim, and there is a quote from that case that I will ---- You give up your claim, there is no case of controversy. That's right. In fact, what the Court said there was when a putative class plaintiff, quote, voluntarily dismisses the individual claims underlying a request for class certification, there is no longer a self-interested party advocating for class treatment in the manner necessary to satisfy Article III standing requirements. And that's what we have. What case is that? That's the Rhodes v. DuPont case. I can give you the citation. It is 636 F. 3rd 88. It's from this Court in 2011. But once Ms. Rhodes, or excuse me, once Ms. Kena provided the declaration saying she has no intent to arbitrate the case on an individual basis, she has given up any argument that there's a case or controversy that has to be decided. Moreover, and I recognize that this is beyond the scope of this appeal, but it's worth noting that in the category of cutting off your nose to spite your face, if somehow she were successful, I don't know how she could ever be an adequate class representative of a class when she says that she has no interest in proceeding on her individual claim. But our Article III argument is laid out in the papers, and I noted in the appellate argument you were focusing on the Baker issue. I can answer any questions, but we think that in the alternative to the statutory reason for finding no appellate jurisdiction, that there's a good Article III basis for dismissing the appeal as well. Finally, on the substance of the appeal, our papers cover all these issues. We can answer any questions. I think two things are worth noting. One is that plaintiff did not contest the creation of the contract. There is, you know, Concepcion leaves open the argument that perhaps state law there may be an argument that is not made here. The argument is that there's a contract that exists and it's unconscionable. So I think as you consider, or if you reach that issue, I think it's important to note that there has been no contract formation argument made here. Second, there was no evidence submitted by Ms. Kina. The main argument, there's a lot of arguments that the plaintiff makes. The main argument is the font was too small and it was too complicated to read. There is no evidence submitted by Ms. Kina, and she knows how to submit declarations because she did one of those in support of the motion to amend the judgment. But there's no declaration, and because there was no declaration, we didn't depose her or take any discovery saying, I didn't understand what I was agreeing to. I couldn't find it, that sort of thing. So the absence of that argument and that evidence, once you get past those things, Concepcion in Italian colors and the cases in that line of the Supreme Court's reasoning, we think control. The agreement was formed. It includes a valid enforceable arbitration clause, and that arbitration clause ought to be enforced as the district court did. So unless the court has other questions, I think I'll walk away from my remaining time. All right. Thank you, Mr. Chessie. Thank you. Mr. Flint. All right. First of all, Ms. Kina's declaration never stated that she had no interest in pursuing her case on an individual basis. It said that it literally made it impossible. The district court's opinion made it impossible. And if you think about the monetary value of her case, it was a $25 or a $29 massage that she lost out on. You're not going to find any attorney in the world that's going to take a case for $30 and spend the time necessary to fight. You say she didn't say she had no intention of arbitrating her claim? No, she had no interest in her claims. She said that she had, she could not do it. The district court, the order of the court says that she alleges she had no intention of arbitrating her claims because the cost of arbitration outweighs the potential recovery. That is correct. That's what the order says. That is correct, Your Honor. Order that's appealed from or sought to be appealed from. Brother counsel said that. Accordingly, she requests her case be dismissed with prejudice. Correct. Brother counsel said that she claimed she had no interest. That is not true. Had the cost not outweighed. Equivalent with the word interest. She says she has no intention. Yes, but I'm merely pointing out that. So you agree she had no intention? She had no intention because it was impossible for her to. So let me give you a poor example. Had, and this goes back to another point I wanted to make about the cost of arbitration and the fact that Groupon claims they'll pay for everything under $10,000. If they specifically state that attorney fees will not be paid, the plaintiff's attorney fees will not be paid on an individual basis. Well, they're going to pay your attorney fees if they think they're going to win. Well, my point on this is, Your Honor, if they had said that they would reimburse attorney fees, then the cost of individual arbitration would not have outweighed the possible benefits of going to arbitration because all of Ms. Kena's costs would be covered. However, that's not the case. That is why Ms. Kena would have an interest in going and fighting individual arbitration had it been possible. Had Groupon agreed to pay for all of her costs. But the fact is she's never going to find an attorney that's going to take a case for $30 and fight it for free. So she is going to end up having to pay those costs on an individual basis. But that isn't the biggest issue here. The biggest issue here does relate to Rule 23 and Ms. Kena's ability to fight an adverse decision or a decision that's adverse to class certification. And Brother Counsel is correct again when he said that we did not file a petition under Rule 23F. There's numerous reasons for that. One, the fact that we never had an ability to bring a motion to certify the class, unlike Baker who did bring a motion to certify the class. The District Court heard that issue in Baker. That issue was never raised in our case. Two, Rule 23F only allows appeal of an order that either grants or denies class certification. We have neither of those in this case. So it is a literal impossibility for us to bring it under 23F. In addition, as noted again in Microsoft v. Baker in footnote 7, an order denying or striking class allegations is the equivalent to an order of denying class certification. The Supreme Court has never said that an order compelling arbitration that includes a ban on class allegations is the equivalent of an order denying class certification. This is an issue of first precedent. But it is our argument that those two are the functional equivalent. It is literally impossible for Ms. Kena to bring her class allegations because the District Court had enforced the ban on class arbitration and class actions. And because of that, it is the functional equivalent of an order denying class certification. It is the exact same as an order striking class claims is found to be the functional equivalent. I understand. If it's the functional equivalent, then why didn't you bring a 23F motion saying, look, this is the functional equivalent? Because there is no. Why is it a functional equivalent for purposes of the argument you're making here but not for purposes of bringing a 23F motion? There is no precedent that says that it is a functional equivalent, which is why we did not. Right. I'm just saying, like, either the argument works here and it works if you file a 23F motion or it doesn't work either place. If you look at it in retrospect, yes, the argument would be the same. It would be identical. I have a question about just Article III standing. I just don't understand as sort of a matter of common sense how it is. What is the retained stake in the outcome of this appeal? I mean, there is no claim left to be tried or arbitrated. The claims are gone. Well, there is. I apologize, I'm not sure exactly of the precedent, but there is precedent that says if a court of appeals has the ability to look at one issue, they can look at all the issues that are there. So if the court of appeals has the ability to look at jurisdiction, they can also overrule all of the other issues in this case, which would in turn overrule the district court's finding of unconscionability, basically the fact that the district court found everything was valid. But there are still no claims left to be pursued. So is the idea that you could revive these claims in the district court, you would go back to the district court and say, now we want to revive the claims? Not to use the term functional equivalent again, but it would be the functional equivalent of overruling a motion for summary disposition. I mean, essentially it would revive the claims on its own. We don't have the case where the plaintiff reserved the right in their stipulation as they did in Baker. We don't have that case in here. We never stipulated with Groupon to reserve the right to appeal, or I'm sorry, to revive the claims. It will just naturally happen if it is overruled in this case. And I don't believe that violates the case or controversy in any way. She still has a stake. And her stake in this case is winning on appeal, winning here. I just feel like you're kind of caught between, a little bit caught between a rock and a hard place, right? Because if the claims are, if the theory for Constitutional 3 standing, I'm sorry, Article 3 Constitutional standing is, well these claims will be revived and then the district court will hear the case, then how is this final? Well, again, it's. A trial left to come. On Rule 23, if there's a denial of a class certification, those claims don't just disappear. If you file a 23-F motion and it's granted on appeal, those claims are automatically revived. It would be the same as it is here. And that's the big issue here is that Groupon's tactic of inserting this ban on class actions and class arbitration into the arbitration clause is doing something that the Federal Arbitration Act was never intended to do, which is block plaintiffs for bringing a class action lawsuit for violations of state and federal regulations. And that's a real issue. There is no ability under 12 or under 28 U.S.C. 1292, there is no ability to appeal because the district court, or there may be an ability to appeal, but that gives the district court final say over an issue that adversely affects class certification. And that is in direct conflict with Rule 23-F, which specifically states, as again in Baker, they stated that by removing the power of the district court to defeat any opportunity to appeal, the drafters of Rule 23-F sought to provide significantly greater protection against the provident certification decisions than 1292B alone offered. Our case, our motion under 59E, does not subvert Rule 23-F as the plaintiff's tactic did. It allows the true purpose of 23-F to come to fruition, which is to give the Court of Appeals the last say on decisions that adversely affect class certification decisions. And that's the main problem. There is no avenue here yet. And there should be. There should be an avenue. Unless the Court has any other further questions, I can address a few of the meat and potato questions that were statements that he made about unconscionability and other things. No other jurisdictional questions. There was just another issue that he stated there was no evidence that would provide some form of evidence in order to prove unconscionability or whether it was illusory. That's not true whatsoever. The Illinois courts specifically state that all you have to prove for procedural or substantive unconscionability is, one, that the term is so difficult to find, read, or understand, that you cannot possibly say that the plaintiff was aware she was reading it. The fact that it specifically says you cannot possibly say that the plaintiff is aware that she had notice of it, that states right there that the plaintiff need not say they don't have notice of it. You can come to that conclusion on your own by determining how difficult it was to read, how hard it was to find. You don't need any evidence whatsoever by the plaintiff's side of her saying she couldn't read it. That's not an element of the procedural unconscionability. Thank you. Thank you. All right. We'll ask the clerk to adjourn the court until tomorrow morning, then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, Robert B. King, Pamela A. Harris